1  IRELL & MANELLA LLP
   Andra Barmash Greene (123931)
2  agreene@irell.com
   A. Matthew Ashley (198235)
3  mashley@irell.com
   Justin N. Owens (254733)
4  jowens@irell.com
   840 Newport Center Drive, Suite 400
5  Newport Beach, California 92660-6324
   Telephone:   (949) 760-0991
6  Facsimile:   (949) 760-5200

7  Attorneys for Defendants

8              **UNITED STATES DISTRICT COURT**

9            **NORTHERN DISTRICT OF CALIFORNIA**

10                    **SAN FRANCISCO**

11 | JACOB SABATINO, individually, and on behalf of all others similarly situated, | ) ) | Case No. 3:15-cv-00363-JST |

12                                          )
                          *Plaintiffs*,     )   **DEFENDANTS' NOTICE OF MOTION**
                                            )   **AND MOTION TO STAY PROCEEDINGS**
13                                          )   **PENDING ARBITRATION;**
             vs.                            )   **MEMORANDUM OF POINTS AND**
14                                          )   **AUTHORITIES IN SUPPORT THEREOF**
   UBER TECHNOLOGIES, INC., a Delaware      )
15 corporation; RASIER, LLC, a Delaware     )   (Filed Concurrently with: Declarations of R.
   limited liability company; RASIER-CA, LLC, )  Michael Cianfrani and Abhay Vardhan;
16 a Delaware limited liability company;     )   [Proposed] Order)
   RASIER-DC, LLC, a Delaware limited       )
17 liability company; RASIER-PA, LLC, a     )   Date:   May 21, 2015
   Delaware limited liability company; and DOES ) Time:   2:00 p.m.
18 1 to 25, inclusive,                      )   Judge:  Hon. Jon S. Tigar
                                            )   Place   San Francisco Courthouse
19                       *Defendants*.       )           Courtroom 9, 19th Floor
                                            )           450 Golden Gate Ave.
20                                          )           San Francisco, CA 94102
   _____)
21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................... 1

I.   INTRODUCTION .......................................................................................................... 1

II.  BACKGROUND ............................................................................................................ 1

    A.   The Uber Registration Process ........................................................................ 1

    B.   The Arbitration Agreement .............................................................................. 3

III. LEGAL STANDARD ................................................................................................... 5

IV.  PLAINTIFF AGREED TO ARBITRATE HIS CLAIMS ON AN INDIVIDUAL BASIS ...................................................................................................... 6

    A.   The Agreement is Governed By The FAA ....................................................... 6

    B.   The Arbitrator Should Decide Any Questions Of Arbitrability .................................................................................................... 7

    C.   Plaintiff Assented To The Arbitration Agreement .......................................... 8

    D.   The Arbitration Agreement Encompasses Plaintiff's Claims ..................... 12

    E.   The Arbitration Agreement Is Not Unconscionable ...................................... 13

V.   CONCLUSION ............................................................................................................. 14

DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING ARBITRATION
Case No. 3:15-cv-00363-JST

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*5381 Partners LLC v. Shareasale.com, Inc.*,
    No. 12cv426, 2013 WL 5328324 (E.D.N.Y. Sept 23, 2013) ............................................ 11

*Allied-Bruce Terminix Cos., Inc. v. Dobson*,
    513 U.S. 265 (1995) ..................................................................................................... 6

*AT&T Mobility v. Concepcion*,
    131 S. Ct. 1740 (2011) .......................................................................................... 5, 14

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986) ............................................................................................... 5, 12

*Bernal v. Southwestern & Pac. Specialty Fin., Inc.*,
    No. C-12-05797, 2014 U.S. Dist. LEXIS 63338 (N.D. Cal. May 7, 2014) .................. 7, 8

*Binder v. Aetna Life Ins. Co.*,
    75 Cal. App. 4th 832 (1999) ......................................................................................... 9

*Bosinger v. Belden CDT, Inc.*,
    358 Fed. Appx. 812 (9th Cir. Cal. 2009) ................................................................... 13

*Buckeye Check Cashing*,
    546 U.S. 440 (2006) .................................................................................................... 6

*Cairo, Inc. v. Crossmedia Servs., Inc.*,
    No. 04-04825, 2005 WL 756610 (N.D. Cal. Apr. 1, 2005) ......................................... 10

*Carnival Cruise Lines, Inc. v. Shute*,
    499 U.S. 585 (1991) .................................................................................................... 9

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
    207 F.3d 1126 (9th Cir. 2000) ..................................................................................... 9

*Crawford v. Beachbody, LLC*,
    No. 14CV1583, 2014 WL 6606563 (S.D. Cal. Nov. 5, 2014) ...................................... 11

*Cronus Invs., Inc. v. Concierge Servs.*,
    35 Cal. 4th 376 (2005) ................................................................................................. 6

*Crook v. Wyndham Vacation Ownership, Inc.*,
    No. 13-CV-03669, 2013 WL 6039399 (N.D. Cal. Nov. 8, 2013) ...................... 7, 8, 12, 14

*Dream Theater, Inc. v. Dream Theater*,
    124 Cal. App. 4th 547 (2004) ................................................................................ 8, 12

*Fteja v. Facebook, Inc.*,
    841 F. Supp. 2d 829 (S.D.N.Y. 2012) ...................................................................... 11

*Garcia v. Enter. Holdings, Inc.*,
    Case No. 14-00596, 2015 U.S. Dist. LEXIS 8799 (N.D. Cal. Jan. 23, 2015) ................ 9

- ii -

**Page(s)**

*Green Tree Fin. Corp. v. Randolph*,
531 U.S. 79 (2000) ................................................................................................. 5

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002) ................................................................................................. 7

*Hubbert v. Dell Corp.*,
835 N.E.2d 113 (Ill. App. Ct. 2005) .................................................................. 11

*Kuehner v. Dickinson & Co.*,
84 F.3d 316 (9th Cir. 1996) ................................................................................... 5

*Major v. McCallister*,
302 S.W.3d 227 (Mo. Ct. App. 2009) ................................................................ 11

*Mortensen v. Bresnan Commc'n., LLC*,
722 F.3d 1151 (9th Cir. 2013) ........................................................................ 5, 14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ............................................................................................. 5, 12

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ..................................................................... 7, 9, 10

*Nicosia v. Amazon.com, Inc.*,
No. 14-CV4513, 2015 WL 500180 (E.D.N.Y. Feb. 4, 2015) ............................ 10

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
724 F.3d 1069 (9th Cir. 2013) ............................................................................... 8

*Pinnacle Museum Towers Ass'n v. Pinnacle Market Dev., LLC*,
55 Cal. 4th 223 (2012) ........................................................................................ 13

*Prograph Int'l Inc. v. Barhydt*,
928 F. Supp. 983 (N.D. Cal. 1996) .................................................................... 13

*Rent-A-Center West, Inc. v. Jackson*,
561 U.S. 63 (2010) ......................................................................................... 7, 13

*Ross v. Am. Exp. Co.*,
547 F.3d 137 (2d Cir. 2008) ............................................................................... 13

*Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*,
198 F.3d 88 (2d Cir. 1999) ................................................................................. 13

*Swift v. Zynga Game Network, Inc.*,
805 F. Supp. 2d 904 (N.D. Cal. 2011) .............................................................. 10

*Tompkins v. 23andMe, Inc.*,
No. 5:13-CV-05682, 2014 WL 2903752 (N.D. Cal. June 25, 2014) .................... 7

**Page(s)**

*Ulbrich v. Overstock.com, Inc.*,
    887 F. Supp. 2d 924 (N.D. Cal. 2012) ............................................................. 14

*Universal Protection Service, L.P., v. Super. Court of San Diego Co.*,
    Case No. D066919, 2015 WL 851090 (Cal. Ct. App. 2015) ............................... 8

*Washington Mut. Bank, FA v. Superior Court*,
    24 Cal. 4th 906 (2001) ........................................................................................ 9

*Windsor Mills, Inc. v. Collins & Aikman Corp.*,
    25 Cal. App. 3d 987 (1972) ................................................................................. 9

DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING ARBITRATION
Case No. 3:15-cv-00363-JST

1             **NOTICE OF MOTION AND MOTION**

2      **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

3         PLEASE TAKE NOTICE THAT on Thursday, May 21, 2015, at 2:00 p.m., or as soon

4 thereafter as the matter may be heard, in Courtroom 9, 19th Floor, 450 Golden Gate Avenue, San

5 Francisco, CA, 94102, before the Honorable Jon S. Tigar, Defendants Uber Technologies, Inc.,

6 Rasier, LLC, Rasier-CA, LLC, Rasier-DC, LLC and Rasier-PA, LLC (collectively, "Uber") will

7 and hereby do move the Court for an order staying these proceedings pending arbitration of the

8 claims pursued by Plaintiff Jacob Sabatino ("Plaintiff").  Defendants' motion is based upon this

9 Notice of Motion, the Memorandum of Points and Authorities offered in support thereof, the

10 supporting Declarations of R. Michael Cianfrani and Abhay Vardhan, and all exhibits thereto, all

11 documents in the Court's file, any matters of which this Court may take judicial notice, and any

12 evidence or argument presented on this matter.

13         Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, Defendants seek the following

14 relief:  An order staying this litigation in favor of arbitration.[1]

15 Dated:  March 23, 2015            IRELL & MANELLA LLP
                                       Andra B. Greene

16                                        A. Matthew Ashley
                                       Justin N. Owens

17

18                                By:  /s/  A. Matthew Ashley

19                                        A. Matthew Ashley

20                                        Attorney for Defendants

21

22

23

24

25

26

27

28

---

[1] Uber reserves the right to file a motion to dismiss under Federal Rule of Civil Procedure 12(b) should the Court deny its motion to stay pending arbitration.  *See Aetna Life Ins. Co. v. Alla Med. Servs.*, *Inc*., 855 F.2d 1470, 1475 (9th Cir. 1988) (because a motion to stay is not a Rule 12(b) motion, its filing does not bar a subsequent motion to dismiss); *see also Conrad v. Phone Directories Co.,* 585 F.3d 1376, 1383 (10th Cir. 2009) ("If a party files a motion under FAA §§ 3 or 4 [and] that motion is denied . . . nothing prevents that party from then filing a Rule 12 motion to dismiss.").

DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING ARBITRATION
Case No. 3:15-cv-00363-JST

1    **<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

2        Uber Technologies, Inc., Rasier, LLC, Rasier-CA, LLC, Rasier-DC, LLC and Rasier-PA,

3    LLC (collectively, "Uber") respectfully submit this memorandum in support of their motion to

4    stay this action in favor of arbitration.

5    **I.    INTRODUCTION**

6        Plaintiff agreed to be bound by Uber's Terms and Conditions. Those Terms and

7    Conditions include a clear and conspicuous agreement to arbitrate (the "Arbitration Agreement"),

8    which mandates staying this action in favor of arbitration.

9        Plaintiff admits that he registered for Uber by creating an account. Complaint ¶¶ 1, 16.

10   In doing so, he was directed via hyperlink to Uber's Terms and Conditions, including the

11   Arbitration Agreement, and was informed that by creating an account he would be agreeing to

12   those Terms and Conditions. Under binding Ninth Circuit authority, supported by precedent

13   throughout the country, this constitutes assent to the Arbitration Agreement.

14       Having assented to the Arbitration Agreement, Plaintiff is bound by its terms, which are

15   fair and indeed generous to the user (as demonstrated below). This includes the requirement that

16   "any dispute, claim or controversy arising out of or relating to" the use of Uber's services

17   (language that undoubtedly encompasses the assertions in this litigation) be resolved either by

18   binding arbitration or in small claims court. Plaintiff's allegations are based entirely on his use of

19   Uber's services to arrange and pay for third-party transportation and thus fall squarely within the

20   scope of the Arbitration Agreement.

21       For all of these reasons and those discussed further below, this action should be stayed in

22   favor of arbitration.

23   **II.    BACKGROUND**

24       **A.    <u>The Uber Registration Process</u>**

25       Uber Technologies, Inc. is a technology company that enables riders to request

26   transportation services from third-party transportation providers. Declaration of Abhay Vardhan

27   ("Vardhan Decl.") ¶ 3. Rasier, LLC, Rasier-CA, LLC, Rasier-DC, LLC and Rasier-PA, LLC are

28   subsidiaries of Uber Technologies, Inc. *Id.*

- 1 -

1    Using Uber's technology platform, riders can request transportation services from their

2    smartphones (such as iPhones) via the Uber App, and these requests are then transmitted to

3    independent transportation providers in the area who are available to receive transportation

4    requests. *Id.* ¶¶ 3-4; Complaint, Dkt. No. 1 ("Complaint") ¶ 14.  But before riders can request

5    transportation services via the Uber App, they must first register by creating an Uber account.

6    Vardhan Decl. ¶¶ 3-4; *see* Complaint ¶ 16.  Riders can register with Uber by creating an account

7    either through the company's website, at https://get.uber.com/sign-up/, or within the Uber App

8    itself.  Vardhan Decl. ¶ 4.  Uber's records confirm that Plaintiff registered on the company's

9    website (either on a computer or tablet, or in a web browser on his smartphone) on July 27, 2014.

10   *Id.* ¶ 5.

11   To create an Uber account through the company's website on July 27, 2014, when Plaintiff

12   registered for Uber, prospective riders were required to complete the following fields contained on

13   a single webpage: name, mobile phone number (and country), email address, password, language,

14   credit card information, postal code, and – if applicable – promotional code.  Vardhan Decl. ¶ 7.

15   In order to create an account after completing these fields, the registrant was required to click the

16   blue sign-up button at the bottom of the webpage.  *Id.*  The following notice was visibly displayed

17   directly above or below the blue sign-up button: "By clicking 'Submit' below, you are agreeing to

18   the Uber Terms and Conditions and Privacy Policy."  *Id.* ¶ 8.  The words "Uber Terms and

19   Conditions" and "Privacy Policy" are hyperlinks.  *Id.*

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING ARBITRATION
Case No. 3:15-cv-00363-JST

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20



21  Vardhan Decl. Ex. A.

22        As the Court can see, the Uber website registration process is short and simple, and is not

23  cluttered with extraneous text or images.

24        **B.      <u>The Arbitration Agreement</u>**

25        Uber's Terms and Conditions contain seven sections.  The first section provides that the

26  Terms and Conditions create a contractual relationship between the registrant and Uber.

27  Declaration of R. Michael Cianfrani ("Cianfrani Decl."), Ex. A at 1.

28

3331709

1    Another section, entitled "Dispute Resolution," (Cianfrani Decl., Ex. A at 7-8), states that:

2    You and Company agree that any dispute, claim or controversy arising out of or
     relating to this Agreement or the breach, termination, enforcement, interpretation or
3    validity thereof or the use of the Service or Application (collectively, "Disputes")[2]
     will be settled by binding arbitration, except that each party retains the right to
4    bring an individual action in small claims court and the right to seek injunctive or
     other equitable relief in a court of competent jurisdiction to prevent the actual or
5    threatened infringement, misappropriation or violation of a party's copyrights,
     trademarks, trade secrets, patents or other intellectual property rights. **You**
6    **acknowledge and agree that you and Company are each waiving the right to a**
     **trial by jury or to participate as a plaintiff or class User in any purported class**
7    **action or representative proceeding.** Further, unless both you and Company
     otherwise agree in writing, the arbitrator may not consolidate more than one
8    person's claims, and may not otherwise preside over any form of any class or
     representative proceeding . . . .

9    The Terms and Conditions also specify that the American Arbitration Association

10   ("AAA") will oversee any dispute, and identifies the particular arbitration rules that will govern:

11
     Arbitration Rules and Governing Law. The arbitration will be administered by the
12   American Arbitration Association ("AAA") in accordance with the Commercial
     Arbitration Rules and the Supplementary Procedures for Consumer Related
13   Disputes (the "AAA Rules") then in effect, except as modified by this "Dispute
     Resolution" section. (The AAA Rules are available at www.adr.org/arb_med
14   (/web/20140905032202/http://www.adr.org/arb_med) or by calling the AAA at 1-
     800-778-7879.) The Federal Arbitration Act will govern the interpretation and
15   enforcement of this Section . . . .

16   *Id.*, at 8.

17   The terms of the arbitration provision heavily favor the user; it permits the user to

18   arbitrate the dispute in the county where he or she resides, and allows for recovery of attorneys'

19   fees only by the user, not Uber:

20   Arbitration Location and Procedure. Unless you and Company otherwise agree, the
     arbitration will be conducted in the county where you reside . . . . If you prevail in
21   arbitration you will be entitled to an award of attorneys' fees and expenses, to the
     extent provided under applicable law. Company will not seek, and hereby waives
22   all rights it may have under applicable law to recover, attorneys' fees and expenses
     if it prevails in arbitration. *Id.*, at 8.

23

24   _____

25   [2] The terms "Service" and "Application" are defined in the Terms and Conditions as
     follows: "By using or receiving any services supplied to you by the Company (collectively, the
26   "Service"), and downloading, installing or using any associated application supplied by the
     Company which purpose is to enable you to use the Service (collectively, the "Application"), you
27   hereby expressly acknowledge and agree to be bound by the terms and conditions of the
     Agreement, and any future amendments and additions to this Agreement as published from time to
28   time at https://www.uber.com/terms (/web/20140905032202/https://www.uber.com/terms) or
     through the Service." *Id.*, at 1.

- 4 -

Further safeguarding riders' access to the arbitral forum is Uber's agreement to bear the burden of

filing, administrative and arbitrator fees for non-frivolous claims:

> Fees.  Your responsibility to pay any AAA filing, administrative and arbitrator fees will be solely as set forth in the AAA Rules.  However, if your claim for damages does not exceed $75,000, Company will pay all such fees unless the arbitrator finds that either the substance of your claim or the relief sought in your Demand for Arbitration was frivolous or was brought for an improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b)).

*Id.*, at 7-8.

Thus, the Arbitration Agreement contains a detailed delineation of the waivers of the

parties, including the waiver of any jury trial right, as well as the numerous protections afforded

the user.

## III.   LEGAL STANDARD

In enacting the Federal Arbitration Act (the "FAA"), Congress's "clear intent" was "to

move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as

possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22-25 (1983) (the

FAA embodies "a liberal federal policy favoring arbitration agreements").  The Ninth Circuit

recognizes that "the FAA's purpose is to give preference (instead of mere equality) to arbitration

provisions." *Mortensen v. Bresnan Commc'n., LLC*, 722 F.3d 1151, 1160 (9th Cir. 2013) (*citing

AT&T Mobility v. Concepcion*, 131 S. Ct. 1740, 1745 (2011)).

Accordingly, "[an] order to arbitrate the particular grievance should not be denied unless it

may be said with positive assurance that the arbitration clause is not susceptible of an

interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*,

475 U.S. 643, 650 (1986); *see also Kuehner v. Dickinson & Co.*, 84 F.3d 316, 319 (9th Cir. 1996)

(holding that the FAA "created a rule of contract construction favoring arbitration.").  "As

arbitration is favored, those parties challenging the enforceability of an arbitration agreement bear

the burden of proving that the provision is unenforceable." *Mortensen*, 722 F.3d at 1157 (citing

*Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91 (2000)).

- 5 -

## IV.    PLAINTIFF AGREED TO ARBITRATE HIS CLAIMS ON AN INDIVIDUAL BASIS

Plaintiff admits that he knowingly and intentionally created (and used) his Uber account. Complaint ¶ 1 ("Plaintiff Jacob Sabatino has registered for an Uber account, and has used his Uber account to obtain and pay for an Uber ride…").  Plaintiff is thus bound by the Terms and Conditions that he was expressly informed would apply to his Uber account.  *See* Section IV(C), *infra*.  As discussed below, because the Arbitration Agreement is governed by the FAA, and because Plaintiff's claims fall within the scope of the Arbitration Agreement, Plaintiff is bound by the Agreement's relevant provisions including: the resolution of disputes by binding arbitration or in small claims court (Section IV(D), *infra*); delegation of threshold arbitrability issues to the arbitrator (Section IV(B), *infra*); and a waiver of any representative or class-wide proceedings (Section IV(E), *infra*).

### A.    The Agreement is Governed By The FAA

Both the express terms of the Arbitration Agreement and the nature of the relationship between Uber and Plaintiff confirm that the FAA governs.  First, the Arbitration Agreement's statement that "[t]he Federal Arbitration Act will govern the interpretation and enforcement" of the agreement is a sufficient basis for application of the FAA.  *See Buckeye Check Cashing*, *Inc. v. Cardegna*, 546 U.S. 440, 442-43 (2006) (FAA found to preempt state law where arbitration agreement expressly provided that the FAA would govern); *see also Cronus Invs., Inc. v. Concierge Servs.*, 35 Cal. 4th 376, 394 (2005) ("[P]arties to an arbitration agreement [may] expressly designate that any arbitration proceeding should move forward under the FAA's procedural provisions rather than under state procedural law.").  In addition, the FAA applies upon a finding that the transactions at issue affect interstate commerce.  *See Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 274-277 (1995) (interpreting the FAA's "involving commerce" provision as broadly as the words "affecting commerce," and confirming that the FAA should be applied coincident with the full reach of Congress's powers under the Commerce Clause).  Where, as here, the transactions involve the use of internet technologies to transmit user requests across a network of independent drivers in over 100 cities across the United States, the "affecting

- 6 -

1  commerce" requirement has been met.  *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175

2  (9th Cir. 2014) (applying the FAA to a dispute involving internet commerce).

3  **B.**  **The Arbitrator Should Decide Any Questions Of Arbitrability**

4  The Court should stay this action and honor the parties' agreement to permit the arbitrator

5  to decide the threshold question of arbitrability.  "[P]arties can agree to arbitrate 'gateway'

6  questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their

7  agreement covers a particular controversy."  *Rent-A-Center West, Inc. v. Jackson*, 561 U.S. 63, 63

8  (2010); *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83-84 (2002) (questions of

9  arbitrability may be submitted to the arbitrator if the parties clearly and unmistakably agree).

10  Indeed, "[a]n agreement to arbitrate a gateway issue is simply an additional antecedent agreement

11  the party seeking arbitration asks the federal court to enforce," and the FAA operates on this

12  agreement just as it does on any other.  *Rent-A-Center West, Inc.,* 561 U.S. at 70.

13  The Arbitration Agreement in this case delegates gateway questions of arbitrability to the

14  arbitrator by incorporation of the AAA Commercial Arbitration Rules.  Cianfrani Decl., Ex. A at

15  8.  Specifically, Rule 7(a) of the AAA Rules provides:  "The arbitrator shall have the power to rule

16  on his or her own jurisdiction, including any objections with respect to the existence, scope, or

17  validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."  AAA

18  COMMERCIAL ARBITRATION RULES AND MEDIATION PROCEDURES at R-7(a) (available at

19  https://www.adr.org/aaa/ShowProperty?nodeId=/UCM/ADRSTG_004103) (effective October 1,

20  2013; last accessed March 20, 2015).  Courts in this District addressing the effect of incorporation

21  of the AAA Rules into contracts – including consumer contracts – have found that such

22  incorporation mandates delegation of the gateway question of arbitrability to the arbitrator.  *See,*

23  *e.g.*, *Crook v. Wyndham Vacation Ownership, Inc*., No. 13-CV-03669, 2013 WL 6039399, at *6

24  (N.D. Cal. Nov. 8, 2013) (Orrick, J.) (granting motion to compel arbitration of putative class

25  plaintiffs' claims and delegating questions of arbitrability to arbitrator); *see also Bernal v.*

26  *Southwestern & Pac. Specialty Fin., Inc.,* No. C-12-05797, 2014 U.S. Dist. LEXIS 63338, at *13-

27  17 (N.D. Cal. May 7, 2014) (Armstrong, J.) (same); *but see Tompkins v. 23andMe, Inc.,* No. 5:13-

28

- 7 -

DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING ARBITRATION
Case No. 3:15-cv-00363-JST

CV-05682, 2014 WL 2903752, at *13 (N.D. Cal. June 25, 2014) (Koh, J.) (declining to delegate questions of arbitrability to arbitrator ).**3**

Applying the incorporation doctrine to delegate issues of arbitrability in a putative consumer class action, the court in *Crook v. Wyndham Vacation Ownership, Inc.* noted that, "[v]irtually every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Crook*, 2013 WL 6039399, at *6 (citing *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013)); *see also Universal Protection Service, L.P. v. Super. Court of San Diego County*, Case No. D066919, 2015 WL 851090 at *5-9 (Cal. Ct. App. 2015) (holding that the parties' "agreement to resolve their arbitration under the AAA rules constitutes clear and unmistakable evidence of their intent that the arbitrator, not the court" decide threshold issues); *see also Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547, 557 (2004) (parties' agreement incorporating AAA Commercial Arbitration Rules provided "clear and unmistakable evidence of the intent that the arbitrator will decide whether a contested claim is arbitrable."). Other courts in this District have reached the same conclusion. *Bernal*, 2014 U.S. Dist. LEXIS 63338, at *14-15 ("Indeed, when an arbitration agreement explicitly incorporates the AAA Rules, numerous courts have held that the parties clearly and unmistakably agreed that the issue of arbitrability would be submitted to arbitration for resolution.").

Consequently, this Court should stay this action and let the arbitrator decide the question of arbitrability.

### C.  Plaintiff Assented To The Arbitration Agreement

As demonstrated above, the incorporation of the AAA Rules into the Arbitration Agreement counsels that issues of arbitrability be delegated to the arbitrator. However, if this Court rules on issues of arbitrability, the Court's role under the FAA is "limited to determining

---

**3** The Ninth Circuit has "express[ed] no view as to the effect of incorporating arbitration rules into consumer contracts." *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1075 n.2 (9th Cir. 2013).

(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1130 (9th Cir. 2000).  "If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Id.*

Mutual assent to contract "may be manifested by written or spoken words, or by conduct," *Binder v. Aetna Life Ins. Co*., 75 Cal. App. 4th 832, 850 (1999), and acceptance of contract terms may be implied through action or inaction.  *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-95 (1991).[4]  Thus, "an offeree, knowing that an offer has been made to him but not knowing all of its terms, may be held to have accepted, by his conduct, whatever terms the offer contains." *Windsor Mills, Inc. v. Collins & Aikman Corp*., 25 Cal. App. 3d 987, 992 (1972).  In the context of online transactions, "the terms of the agreement are binding, even if the user did not actually review the agreement, provided that the user had actual knowledge of the agreement or the website put a 'reasonably prudent user on notice of the terms of the contract.'" *Garcia v. Enter. Holdings, Inc*., Case No. 14-00596, 2015 U.S. Dist. LEXIS 8799 at *21-22 (N.D. Cal. Jan. 23, 2015) (citing *Nguyen*, 763 F.3d at 1176).

In a recent decision, the Ninth Circuit noted that:  "While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract.  One such principle is the requirement that mutual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract." *Nguyen,* 763 F.3d at 1175 (internal citations omitted).  The key question is whether the user had inquiry notice of the terms and conditions.  *Id.* at 1176-77.  "[W]here the website contains an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound," courts have enforced the agreements.  *Id.* at 1177.  The Ninth Circuit also noted that "the conspicuousness and placement of the 'Terms of Use' hyperlink, other notices given to users of the terms of use, and

---

[4] Where, as here, the plaintiff alleges subject matter jurisdiction based on diversity of citizenship, federal courts look to the choice of law principles of the forum state.  *Nguyen*, 763 F.3d at 1175.  The default choice of law presumption in California is that California law applies. *See Washington Mut. Bank, FA v. Super. Court*, 24 Cal. 4th 906, 919 (2001) ("[T]he forum will apply its own rule of decision unless a party litigant timely invokes the law of a foreign state.").

- 9 -

1  the website's general design all contribute to whether a reasonably prudent user would have

2  inquiry notice" of the terms and conditions.  *Id.* at 1177.

3       In this case, there was undoubtedly inquiry notice.  The Uber registration process is clear,

4  simple and unequivocal.  The website registration process utilized by Plaintiff consists of a single

5  webpage with a limited number of fields for the prospective registrant to complete.  Vardhan Decl.

6  ¶ 7; *id.* at Ex. A.  Directly above the sign-up button that completes the process is a textual notice

7  stating: "By clicking 'Submit' below, you are agreeing to the Uber Terms and Conditions and

8  Privacy Policy."  *Id.*  The phrases "Uber Terms and Conditions" and "Privacy Policy" are

9  hyperlinks.  *Id.* ¶ 8.  The Uber website registration process thus provides the required "explicit

10 textual notice that [creating an Uber account] will act as manifestation of the user's intent to be

11 bound," satisfying the *Nguyen* standard.  *Nguyen,* 763 F.3d at 1177.[5]

12      In situations like the one here – as *Ngyuen* recognizes – courts in this District and

13 throughout the nation (federal and state) have repeatedly held users to terms and conditions when

14 they were on notice that such terms would bind them if they proceeded.  *See, e.g., Swift v. Zynga*

15 *Game Network, Inc.*, 805 F. Supp. 2d 904, 908, 911 (N.D. Cal. 2011) (Mag. J. Laporte)

16 (videogame user bound by Zynga's online terms and conditions because she was told that, "By

17 using YoVille, you also agree to the YoVille [hyperlink] Terms of Service" and the user

18 proceeded) (compelling arbitration); *Cairo, Inc. v. Crossmedia Servs., Inc*., No. 04-04825, 2005

19 WL 756610, at *4-5 (N.D. Cal. Apr. 1, 2005) (J. Ware) (enforcing forum selection clause in

20 website's terms of use where website expressly stated: "By continuing past this page and/or using

21 this site, you agree to abide by the Terms of Use for this site…") (granting motion to dismiss for

22 improper venue); *see also Nicosia v. Amazon.com, Inc.*, No. 14-CV4513, 2015 WL 500180, at *5

23 (E.D.N.Y. Feb. 4, 2015) (online Amazon customer who placed order was bound by contract terms

24

25       [5] In *Nguyen,* the court found that there was no such "explicit textual notice" in that case,
    because the only notice to the user that the terms and conditions would bind them was in the terms
26  and conditions themselves – which the users were never prompted to review or told would be
    binding.  *See Nguyen,* 763 F.3d at 1174 (noting that the requisite warning – "[b]y visiting [the site]
27  . . . creating an account, [or] making a purchase . . . a User is deemed to have accepted the Terms
    of Use" – was not visible unless and until the user clicked to view the terms).  The opposite is true
28  in this case, where the user is expressly told during the account creation process that creating the
    account will subject the user to the terms and conditions.

- 10 -

1  when website stated that, "By placing your order, you agree to Amazon.com's privacy, notice and

2  conditions of use," which were reachable by a hyperlink on the same webpage) (compelling

3  arbitration); *Crawford v. Beachbody, LLC*, No. 14CV1583, 2014 WL 6606563, at *3 (S.D. Cal.

4  Nov. 5, 2014) (online customer who placed order was bound by contract terms when website

5  stated that "By clicking Place Order below, you are agreeing that you have read and understand

6  the Beachbody Purchase Terms and Conditions," which were at a hyperlink on the same webpage)

7  (granting motion to transfer venue); *5381 Partners LLC v. Shareasale.com, Inc*., No. 12cv426,

8  2013 WL 5328324, *4 (E.D.N.Y. Sept. 23, 2013) (online purchaser who activated account was

9  bound by contract when website stated that "by clicking and making a request to Activate, you

10 agree to the terms and conditions in the Merchant Agreement," and a hyperlink to the terms and

11 conditions was available on the same page) (granting motion to transfer venue); *Fteja v.*

12 *Facebook, Inc.,* 841 F. Supp. 2d 829, 837-38 (S.D.N.Y. 2012) (Facebook account holder was

13 bound by contract when holder was expressly informed during the internet sign up process that

14 registering would manifest agreement to the terms of use) (granting motion to transfer venue);

15 *Major v. McCallister,* 302 S.W.3d 227, 229 (Mo. Ct. App. 2009) (binding online customer to

16 contract when:  "There were spaces for Appellant to enter her contact information, followed by a

17 'Submit for Matching Pros' button.  Next to the button was a blue hyperlink to the website terms

18 and this notice:  'By submitting you agree to the Terms of Use.'") (affirming dismissal for

19 improper venue); *Hubbert v. Dell Corp.*, 835 N.E.2d 113, 122 (Ill. App. Ct. 2005) ("The statement

20 that the sales were subject to the defendant's 'Terms and Conditions of Sale' . . . accessible online

21 by blue hyperlinks, was sufficient notice to the plaintiffs that purchasing computers online would

22 make the 'Terms and Conditions of Sale' binding on them.") (compelling arbitration).  Having

23 admitted that he successfully completed the Uber registration process, and that he knowingly

24 created and used his Uber account, Plaintiff must now abide by the Terms and Conditions that he

25 was informed would govern his Uber account.

26      In summary, Plaintiff at the very least was on inquiry notice that by creating his Uber

27 account he was agreeing to Uber's Terms and Conditions, which include the Arbitration

28 Agreement.  That is all the law requires to stay this action in favor of arbitration.

- 11 -

### D.   The Arbitration Agreement Encompasses Plaintiffs' Claims

As demonstrated above, it is the arbitrator who should decide the scope of the Arbitration Agreement and whether it encompasses Plaintiff's claims.  *See* Section IV(B), *supra*; *Crook*, 2013 WL 6039399, at *6 (holding that incorporation of AAA Rules in consumer contract required that "plaintiffs' objections to the scope of the dispute resolution clause must be decided by the arbitrator.").  However, to the extent this Court decides the issue, under the FAA a court must compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *AT&T Techs., Inc.*, 475 U.S. at 650.  Moreover, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.

The Arbitration Agreement provides that "any dispute, claim or controversy arising out of or relating to this Agreement . . . or the use of the Service or Application (collectively, 'Disputes') will be settled by binding arbitration [or] in small claims court."  *See* Cianfrani Decl., Ex. A at 8. The Court need look no further than the Plaintiff's own allegations to see that this case arises out of and relates to Uber's services and application.  *See, e.g.,* Complaint ¶ 37 ("Plaintiff relied on Defendants' representations . . . when making the decision to use the Uber App to obtain rideshare services."); ¶ 28 ("In its effort to mislead the public into believing that its services are the safest available . . ."); ¶ 32 ("Because Uber itself knows of the danger presented by its services, it attempts to disclaim any liability.").  Indeed, all of Plaintiff's allegations in one way or another "aris[e] out of or relat[e]" to Uber's services.  *See Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547, 553 n.1 (2004) ("An arbitration clause that covers *any claim arising out of or relating to* the contract or the breach thereof is very broad.") (emphasis in original) (internal quotation marks omitted).

Consequently, the Arbitration Agreement encompasses Plaintiff's claims in this case.[6]

---

[6] The Arbitration Agreement also covers Rasier, LLC, Rasier-CA, LLC, Rasier-DC, LLC and Rasier-PA, LLC (collectively, the "Rasier Entities").  First, Plaintiffs have sued the Rasier Entities in their capacity as "wholly owned subsidiary[ies] of Uber Technolgies, Inc."  *See* Complaint, ¶¶ 3-6; *id*. at ¶ 7 ("Defendant and its subsidiaries, affiliates, and other related entities, and its respective employees were the agents, servants and employees of Defendant, and each was acting within the purpose and scope of that agency and employment.").  "Agency principles" permit "nonsignatory corporations to compel arbitration under arbitration clauses signed by their

3331709

### E.     The Arbitration Agreement Is Not Unconscionable

On the question of unconscionability, the Court's analysis is limited to the issue of whether the arbitration provision, by itself, is unconscionable. *See Rent-A-Center West*, *Inc*., 561 U.S. at 70-71("[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate."). Here, the Complaint does not contain *any* allegation that any aspect of the *arbitration provision* is unconscionable. That alone ends the unconscionability inquiry.

In any event, "[u]nder California law, a contract provision is unenforceable due to unconscionability only if it is <u>*both*</u> procedurally <u>*and*</u> substantively unconscionable." *Bosinger v. Belden CDT, Inc*., 358 Fed. Appx. 812, 814 (9th Cir. Cal. 2009). Moreover, "the party opposing arbitration bears the burden of proving any defense, such as unconscionability." *Pinnacle Museum Towers Ass'n v. Pinnacle Market Dev., LLC*, 55 Cal. 4th 223, 236 (2012). That means Plaintiff must show that the arbitration clause is "so one-sided as to shock the conscience." *Pinnacle*, 55 Cal. 4th at 246 (internal quotations omitted). Plaintiff cannot come close to meeting his burden.

Far from being "unjustifiably one-sided," the Arbitration Agreement is bilateral and replete with user safeguards. For example, the Arbitration Agreement provides that if a user's claim for damages does not exceed $75,000, Uber will pay <u>*all*</u> of the user's "filing, administrative and arbitrator fees" for non-frivolous claims. Cianfrani Decl., Ex. A at 8. Moreover, the Arbitration Agreement recognizes the right of users to collect attorneys' fees and expenses if they prevail in arbitration, even though Uber itself waives rights it may have to collect attorneys' fees and expenses. *Id*. The Arbitration Agreement further ensures the user's ability to pursue a remedy by

---

corporate parents." *See Prograph Int'l Inc. v. Barhydt*, 928 F. Supp. 983, 990 (N.D. Cal. 1996); *see also Ross v. Am. Exp. Co*., 547 F.3d 137, 144 (2d Cir. 2008) (a non-signatory may compel arbitration where the non-signatory has a "corporate relationship to a signatory party") (emphasis in original). In addition, the complaint treats the Rasier Entities and Uber Technologies as if they were interchangeable and seeks to hold them liable for the same conduct. *See Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.,* 198 F.3d 88, 97 (2d Cir. 1999) (non-signatory can compel arbitration where plaintiffs treated "related companies as though they were interchangeable"). Accordingly, like Uber Technologies, Inc., the Rasier Entities are also entitled to a stay pending arbitration of Plaintiffs' claims against them.

providing that arbitration proceedings "will be conducted in the county" where the user resides, thus eliminating the threat of prohibitive travel expenses. *Id.* These provisions comprehensively safeguard the user's access to the arbitral forum on an individual basis, and go well beyond what is required to survive a challenge based on alleged unconscionability. *See Ulbrich v. Overstock.com, Inc.,* 887 F. Supp. 2d 924, 933-34 (N.D. Cal. 2012) (rejecting unconscionability challenge even where arbitration provision required employees to share in costs of arbitration and to attend the arbitration at an out-of-state location, and lacked complete mutuality in the remedies available to the parties); see also *Crook,* 2013 WL 6039399, at *5 (enforcing arbitration agreement despite plaintiffs' argument that agreement was unconscionable because it (i) contemplated that the parties would share some of the fees and costs of arbitration, (ii) incorporated the AAA Rules, and (iii) required travel to an arbitration forum outside plaintiffs' home county).

And to the extent Plaintiff contends that the class waiver is unconscionable, any such contention is precluded by Supreme Court and Ninth Circuit precedent. *Concepcion,* 131 S. Ct. at 1748 (holding that a rule barring class action waivers "interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA"); *Mortensen,* 722 F.3d at 1160 ("In our view, *Concepcion* crystalized the directive… that the FAA's purpose is to give preference (instead of mere equality) to arbitration provisions.").

The Arbitration Agreement thus is not unconscionable and should be enforced.

## V. CONCLUSION

The named Plaintiff here alleges that he created an Uber account, registered to use the Uber App, and in fact used the Uber App to arrange transportation services. There is no dispute that, at the time the Plaintiff created his Uber account, Uber's Terms and Conditions contained an Arbitration Agreement that (i) required the parties to resolve disputes either by binding arbitration or in small claims court, and (ii) included a class action waiver. The only disputed issue here is whether the Arbitration Agreement is valid and enforceable; for all the reasons discussed herein, it is. Consistent with the "liberal federal policy favoring arbitration agreements," Uber respectfully requests that the Court stay this litigation in favor of the arbitration proceedings to which the parties agreed.

1

2   Dated:  March 23, 2015                                    IRELL & MANELLA LLP
                                                            Andra B. Greene
3                                                           A. Matthew Ashley
                                                            Justin N. Owens
4

5                                                     By:  /s/  A. Matthew Ashley
6                                                            A. Matthew Ashley
                                                            Attorney for Defendants
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 15 -

3331709

1

**ECF ATTESTATION**

2          I, Justin N. Owens, am the ECF user whose ID and password are being used to file

3    **DEFENDANTS' NOTICE OF MOTION AND MOTION TO STAY PROCEEDINGS**

4    **PENDING ARBITRATION**.  I hereby attest that I have on file all holographic signatures

5    corresponding to any signatures indicated by a conformed signature (/s/) within this e-filed

6    document.

7                                                            By:      /s/  Justin N. Owens

8                                                                          Justin N. Owens

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3331709